UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY, *Plaintiff*, *v.* EMELIN PAGAN; MAYRA OSORIO, a/k/a MAYRA LOZADA; TARA OSORIO; and NATALIE OSORIO, *Defendants.* | Civil No. 3:19-cv-01205 (JBA) September 2, 2020 |

**RULING DENYING DEFENDANT PAGAN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jackson National Life Insurance Company ("Jackson National") brings this interpleader action against Defendants Emelin Pagan ("Pagan"), Mayra Osorio, a/k/a Mayra Lozada ("Lozada"), Tara Osorio ("Tara"), and Natalie Osorio ("Natalie") seeking an adjudication among the defendants of their competing claims for the proceeds of a life insurance policy (the "Policy"), issued on December 7, 1999, to Adalberto Osorio ("Decedent"), who died on February 9, 2019. (Compl. in Interpleader [Doc. # 1] at 1-2.) Defendant Pagan moves for summary judgment, arguing that Decedent's Change of Beneficiary form sent to Jackson National substantially complied with the Form's requirements and made Pagan and Natalie the proper beneficiaries under the Policy. (Pagan's Mem. Supp. Mot. for Summ. J. [Doc. # 49] at 1.) Defendant and Cross-Claimant Mayra Lozada opposes Pagan's motion for summary judgment, arguing that there is a material dispute as to whether the Change of Beneficiary form is valid. (Lozada's Mem. Opp. Mot. for Summ. J. [Doc. # 52] at 5.)

**I. Undisputed Material Facts[1]**

---

[1] The Court notes that Pagan failed to include the required Local Rule 56(a)1 statement of undisputed facts with her motion for summary judgment. *See* Local Rule 56(a) ("[A] party moving for judgment shall file and serve with the motion and supporting memorandum a document entitled 'Local Rule 56(a)1 Statement of Undisputed Material Facts.' . . . [This statement must include] separately numbered paragraphs [that] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial.") Even after Lozada identified this deficiency, Pagan still failed to submit a compliant statement. She instead copied paragraphs

On July 1, 1999, Decedent applied for a life insurance policy with Jackson National, formerly Valley Forge Life Insurance, in Connecticut. (Pagan's L.R. Stmt. [Doc. # 55] ¶ 2.) The application was approved, and the policy was issued on December 7, 1999, with Lozada, who was then Decedent's wife of twenty-two years, named as the primary beneficiary and Tara, the eldest of Decedent's three children with then-wife Lozada, as the contingent beneficiary. (*Id*.; Ex. 1 (Lozada Aff.) to Lozada's Mem. Opp. Mot. for Summ. J. [Doc. # 52-2] at 1.)

On May 3, 2001, Lozada and Decedent divorced, (Lozada Aff. at ¶ 6), and Decedent later married Pagan, (*see* Pagan's L.R. Stmt. ¶ 14; Lozada's L.R. Stmt. [Doc. # 52-1] ¶ 11).

On February 6, 2017, Jackson National received an application from Decedent for a Request for Change of Beneficiary Form, which Jackson National provided to him along with instructions for the Form's completion. (Pagan's L.R. Stmt. ¶ 13). Jackson National received Decedent's completed Form which was dated December 26, 2017. (*Id.* at ¶ 14; Lozada's L.R. Stmt. ¶ 13). The Form named Natalie (another of Decedent and Lozada's children) and Pagan (Decedent's wife at the time of his death) as primary beneficiaries of the Policy entitling them to forty-five and fifty-five percent of the Policy's benefits, respectively. (Ex. 3 (Completed Request for Change of Beneficiary Form) to Lozada's Mem. Opp. Mot. for Summ. J. [Doc. # 52-4].) The Form's signature block includes the printed names of Decedent, Pagan, and Natalie, with a signature next to each printed name. Below the signature block is a "notary" section, which is stamped by a Notary Public of the State of Connecticut and has "12/26/17 For Adalberto Osorio" written next to it. (*Id.*) The signatures of Pagan and Natalie do not appear to be notarized. (*Id.*)

Upon receipt of Decedent's Form, Jackson National followed up with a letter to Decedent, dated January 9, 2018, requesting that Decedent provide "a completed request form with," a "valid policy number," and a clarification of whether Natalie was to be an

---

1-27 of Jackson National's complaint and states that they undisputed without citing any supporting evidence. (Pagan's L.R. Stmt. [Doc. # 55] at 1.)

"irrevocable beneficiary" on the Policy. (Exhibit 4 (Letter from Jackson National to Decedent) to Lozada's Mem. Opp. Mot. for Summ. J. [Doc. # 52-5].)   Jackson National identified the deficiencies in the submitted Form as a missing numeral from his policy number, a lack of clarity as to whether Natalie was a "primary" or "irrevocable primary" beneficiary, and missing signatures and dates. (Letter from Jackson National to Decedent; Pagan's L.R. Stmt. ¶ 15; Lozada's L.R. Stmt. ¶¶ 14-15.) This letter stated to Decedent that "we must have the following information to complete your request." (Letter from Jackson National to Decedent.)

Thirteen months later, on February 4, 2019, Decedent died, having never had further contact with Jackson National about his change of policy beneficiary request. (Pagan's L.R. Stmt. ¶ 16; Lozada's L.R. Stmt. ¶14.) Upon his death, the Death Benefit under his Policy became payable to the beneficiaries by its terms. (Pagan's L.R. Stmt. ¶ 16.)

Pagan seeks judgment in her favor declaring the Form "should . . . be given legal effect," and that she is therefore entitled to forty-five percent of the Policy's benefits and Natalie to fifty-five percent. (Pagan Mem. at 3.) Lozada opposes Pagan's motion, arguing that "there are material factual disputes regarding the Change Form and the intent of Adalberto Osorio to change his life insurance policy." (Lozada's Mem. at 9.) Neither Tara nor Natalie has filed any summary judgment motions, nor did they file answers to Jackson National's Complaint in Interpleader.

## II. Discussion

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

"The moving party bears the initial burden of showing why it is entitled to summary judgment." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where, as here, the nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Id.* at 272–73 (citing *Celotex*, 477 U.S. at 323). "If the movant makes this showing in either manner, the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). "Like the movant, the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.* (citing *Celotex,* 477 U.S. at 324; *Matsushita,* 475 U.S. at 586).

### B. Connecticut Law Regarding Change of Beneficiary

Under Connecticut state law, when an insurance policyholder does not comply strictly with a policy's requirements for changing beneficiaries of their life insurance policy, the

doctrine of substantial compliance determines whether the change should nonetheless be given effect. *Engleman v. Connecticut Gen. Life Ins. Co*., 240 Conn. 287, 295 (1997). In *Engleman*, the Connecticut Supreme Court held that the owner of a life insurance policy will have effectively changed the beneficiary if "(1) the owner clearly intended to change the beneficiary and to designate the new beneficiary; and (2) the owner has taken substantial affirmative action to effectuate the change in the beneficiary." *Id.* at 298.

In Connecticut, intent is examined under all the circumstances presented. *See New Britain Real Estate & Title Co. v. Hartford Acceptance Corp.*, 153 A. 658, 659 (Conn. 1931) ("[T]he construction to be accorded the instrument is dictated by the intent of the parties . . . in light of the circumstances under which it was executed.") (internal citation omitted). For example, in *Engleman*, a policyholder was found to have substantially complied with her policy's requirements when she discussed changing her beneficiaries with her insurance agent and an attorney and wrote a letter to her insurance company looking to effectuate the change. *Engleman,* 240 Conn. at 290. Each of those facts was considered by the Connecticut Supreme Court in its determination that "it was [insured's] intention to change the beneficiary, and that there was no evidence that she had ever abandoned that intention." *Id.* In the Connecticut Superior Court case of *St. Stanislaus Church of New Haven v. AIG Annuity Ins. Co.,* the court held that an insured's "completing, signing, and sending the Annuity Withdrawal Request went well beyond the simple making of an oral statement as to his intent." *St. Stanislaus Church of New Haven v. AIG Annuity Ins. Co.*, No. 006718, 2005 WL 3624420 at *3.* The court therefore gave effect to the insured's Annuity Withdrawal Request despite the fact that the insured did not strictly comply with the terms of his policy for withdrawal. *Id.*

### C. Pagan's Motion for Summary Judgment

Pagan seeks summary judgment based primarily on the Form submitted to Jackson National, arguing that Decedent substantially complied with the requirements for changing

his beneficiaries because the Form itself showed both sufficient evidence of intent and substantial affirmative action toward making the change of beneficiary. Pagan cites several cases, discussed below, to support her position that Decedent's completion of the Form, even with some errors, is sufficient to establish both intent and affirmative action to effectuate the change of beneficiary. On this basis, Pagan argues that the Form should be given legal effect and that she and Natalie are thus the proper beneficiaries.

Lozada opposes summary judgment because she argues that there remains a critical factual dispute as to whether Decedent intended to change the beneficiaries on his policy, illustrated by the disputed evidence, and whether he actually completed the Form submitted to Jackson National. Accordingly, she argues that the Form should not be given legal effect and that she and Tara are therefore the proper beneficiaries. Lozada relies on her daughter Natalie's affidavit which states that the signature that reads "Natalie Osorio" on the second page of the Form is not Natalie's, which Pagan concedes in her affidavit. (Natalie Aff. ¶ 5; Pagan Aff. ¶ 4.)  Natalie also avers that she recognizes the handwriting on the Form as Pagan's, including Decedent's signature. (*Id.* at ¶ 8.) Pagan strongly disputes Natalie's statements, claiming that Pagan herself was present when Decedent completed the form, that he wrote all of the printed names and dates on the Form including printing Pagan's name, and that the only thing she wrote on the Form was her own signature. (Pagan's Aff. ¶ 4.) Lozada further argues that Decedent's words and actions prior to his death demonstrate that Decedent did not submit the completed beneficiary change request form to Jackson National. (Lozada's Mem. at 5.) Natalie states that sometime before his death when Decedent "was ill with cancer," he told Natalie that "he did not have a will and he wanted to make sure that [she] knew where his possessions [were] located." (Natalie Aff. ¶ 11.)  Decedent also told her that "he wanted to separate from his wife, Emelin Pagan." (*Id.* at ¶ 10.) Natalie asserts that Decedent told her "that he was aware that [her] mother Mayra Lozada was the beneficiary to his life insurance policy." (*Id.* at ¶ 12.) Similarly, Lozada claims that "[e]ven

6

though" they were divorced, he "told me he still wanted me to be the beneficiary of the life insurance" and that "that was the case until the time of his death." (Lozada Aff. ¶ 7.) Pagan disputes any relationship troubles, stating that she and Decedent "never discussed the possibility of separating" and "were very close" "during [their] entire marriage." (*Id.*) This central factual dispute of whether Decedent himself completed and signed the beneficiary form and therefore whether Decedent intended to change the beneficiaries of his life insurance policy must be resolved by the fact finder at trial.[2]

The Second Circuit has stated that "summary judgment is notoriously inappropriate for determinations of claims in which intent, good faith, and other subjective feelings play dominant roles." *Hartford Life Ins. Co. v. Einhorn*, 497 F. Supp. 2d 398, 402 (E.D.N.Y. 2007) (quoting *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993)) (denying motion for summary judgment in interpleader insurance action because "a reasonable juror could conclude" that the decedent did not intend to change the beneficiary of his life insurance policy). Intent is exactly what is at issue in this case.

Further, Decedent's failure to respond to Jackson National's request for further information for the thirteen months preceding his death puts at issue Decedent's intent to make any beneficiary change, particularly since Jackson National informed him that there were discrepancies in the Form he submitted and explicitly stated that without this information Jackson National would not complete the beneficiary change. Sowing further doubt about Decedent's intent at the time of his death are Natalie's disputed conversations with Decedent about his relationship with Pagan which could arguably bear on Pagan's credibility.

Pagan cites several cases she argues stand for the proposition that Decedent's completion of the Form, even with certain mistakes, is legally sufficient to show affirmative action in furtherance of his intent to change the beneficiary. Pagan argues that "Mr. Osorio

---

[2] No party in this action has claimed a jury trial.

in this case did, or failed to do, none of the things that have been found to be omissions or mistakes held to void or disregard a proposed change of beneficiary." (Pagan's Mem. at 4.) An examination of the factual circumstances of these cases shows them to be largely inapposite.

Pagan cites *Dooley v. James Dooley Associates* from the Supreme Court of Illinois, in which the defendant's writings could have indicated an intent to change beneficiaries, but did not because he never communicated them to the insurance company. *Dooley v. James A. Dooley Associates Employees Ret. Plan*, 442 N.E.2d 222, 228 (Ill. 1982). The Supreme Court of Illinois reasoned that, although the decedent "was contemplating changing beneficiaries and had done some work in that regard[,] . . . the facts that decedent had signed typewritten designations in the past and contemplated doing so again support a finding that he did not intend what he had done to be effective." *Id*. at 227-228.

Pagan also relies on *Tatleman v. Tatleman*,  from the Illinois Appellate Court, where a "long history of marital disputes, severe estrangement, and several clear oral expressions of intent to replace his wife as beneficiary" could not be given effect to change the beneficiary because no writing was filed with the insurance company. (Pagan's Mem. Supp. Mot. for Summ. J. at 5.)

Pagan relies on *Metropolitan Life Insurance Company v. Johnson,* 297 F. 3d 558, 567 (7th Cir. 2002), to illustrate that Decedent's submission of the Form constitutes valid affirmative action despite its several errors. In *Metropolitan Life Insurance*, the court held that inconsequential mistakes like a wrong address do not invalidate a form for purposes of substantial compliance, particularly where the decedent believed, based on a confirmation by the insurance company, that he had done all he needed to do to make the change.  Here, while Decedent submitted the Change of Beneficiary Form to Jackson National, he was informed it could not be effected without response to the specific requirements which he never addressed.

8

The Court concludes from the record that there is a genuine dispute as to the material fact of Decedent's intent to change the beneficiary of the life insurance policy which could reasonably support a conclusion that either Decedent intended to change his beneficiaries *or* that he did not so intend. Because, on summary judgment, the Court must not weigh witness credibility or choose among multiple reasonable inferences to be drawn from the evidence in the record, summary judgment is not appropriate.

**III. Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc # 48] is DENIED.

IT IS SO ORDERED.

_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 2nd day of September 2020.