UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE CO.<br><br>*Plaintiff*,<br><br>*v.*<br><br>EMELIN PAGAN, MARYA OSORIO A/K/A MAYRA LOZADA, TARA OSORIO, AND NATALIE OSORIO<br><br>*Defendants.* | Civil No. 3:19cv1205 (JBA)<br><br>February 8, 2021 |

**MEMORANDUM OF DECISION**

On October 26, 2020, this Court held a one-day, four-witness virtual bench trial on Plaintiff's interpleader claim to resolve Defendants' competing claims to Adalberto Osorio's life insurance policy proceeds. Mayra Osorio Lozada, Decedent's first wife, claimed she was the beneficiary of the policy, as did Emelin Pagan, Decedent's wife at the time of his death. Based on the trial evidence, the Court finds that Mayra Lozada is the primary beneficiary of Decedent's life insurance policy and that she is therefore entitled to receive the proceeds.

   **I.     Findings of Fact**

On July 1, 1999, Adalberto Osorio ("Decedent") applied for a $150,000 life insurance policy with Jackson National Company, formerly known as Valley Forge Life Insurance Company, naming his wife Mayra Osorio Lozada as the primary beneficiary and his eldest daughter Tara Osorio as the contingent beneficiary. (Valley Forge Life Insurance Application, Ex. 1 to Lozada's Trial Mem. [Doc. # 63-1].) Decedent's application was approved, and his policy was issued on December 7, 1999. (Valley Forge Life Insurance Policy, Ex. 2 to Lozada's Trial Mem. [Doc. # 63-2].) At the time the policy was issued, Lozada and Decedent had been married for twenty-two years and had three children together.

On May 3, 2001, Ms. Lozada and Decedent divorced. In 2008, Decedent married Emelin Pagan before he became ill with cancer in 2017. On February 6, 2017, Jackson

National received Decedent's application for a Request for Change of Beneficiary Form ("the Form"), which Jackson National provided to him, along with instructions for the Form's completion. Jackson National received Decedent's completed Form on December 29, 2017. (Letter from Jackson National, Lozada's Ex. 4.) The Form was filled out, naming Natalie Osorio, another of Decedent and Ms. Lozada's children, and Pagan as primary beneficiaries of the Policy, designating them to receive fifty-five and forty-five percent of the Policy benefits, respectively. (Form, Lozada's Ex. 1.)

The Form contains a block at the bottom of the page for the policyholder and beneficiaries to sign and date. (*Id.*) Decedent's hand-printed name and signature appear, twice, above the line designated for the policyholder and are both dated 12/26/2017. (*Id.*) Ms. Pagan's printed name and signature appear below the line designated for the policyholder's spouse, and Natalie Osorio's printed name and signature appear above the line designated for the irrevocable beneficiary. (*Id.*) Below the signature block is a space for a notary to notarize any signatures. (*Id.*) The space contains a notary stamp with the name "Damien Vasseur" which appears below his signature. (*Id.*) Below the notary stamp is the date, 12/26/17, and the inscription "for Adalberto Osorio." (*Id.*)

Natalie testified that the signature beside her name is not hers. Ms. Pagan did not dispute this, testifying that Decedent signed Natalie's name himself. When asked if she knew who signed her name on the Form, Natalie testified that she did not recognize the handwriting as her father's and, "if [she] had to guess, [she] would [say it] was Emelin's."

In a letter mailed to Decedent dated January 9, 2018, Jackson National responded to the receipt of Decedent's Form by requesting that Decedent provide "a completed request form with," a "valid policy number," and a clarification of whether Natalie was to be an "irrevocable beneficiary" on the policy. (Letter from Jackson National, Lozada's Ex. 4.) On the Form Decedent had submitted, a digit was missing from his policy number and Natalie Osorio was listed as a revocable beneficiary in one place, but as an irrevocable beneficiary

2

in another place. (Form, Lozada's Ex. 1.) The January 9 letter expressly stated that Jackson National "must have the following information to complete your request" to change the beneficiary of Decedent's life insurance policy. (Letter from Jackson National, Lozada's Ex. 4.)

Natalie testified that when her father was ill, she visited him regularly, both at home and at the hospital. She testified that in the months leading up to his death that Decedent instructed her several times "not to trust anybody," and that "his life insurance was in [her] mother's and sister's name," and that her sister was the "cobeneficiary or the contingent beneficiary." Natalie testified that, at the time, Decedent's relationship with Ms. Pagan "wasn't working out" and that he told her that he wanted to separate from Ms. Pagan.

Decedent died on February 4, 2019, having never had further contact with Jackson National about his change of policy beneficiary request and having never supplied the requested information. Upon his death, the death benefit under Decedent's policy became payable to the beneficiaries by its terms.

## II. Findings of Law

The sole issue at trial was who is the legal beneficiary of Decedent's life insurance policy. Under Connecticut state law, even when an insurance policyholder does not comply strictly with a policy's requirements for changing beneficiaries of their life insurance policy, the doctrine of substantial compliance determines whether the change should nonetheless be given effect. *Engleman v. Connecticut Gen. Life Ins. Co.*, 240 Conn. 287, 295 (1997). In *Engleman*, the Connecticut Supreme Court held that the owner of a life insurance policy will have effectively changed the beneficiary if "(1) the owner clearly intended to change the beneficiary and to designate the new beneficiary; and (2) the owner has taken substantial affirmative action to effectuate the change in the beneficiary." *Id.* at 298.

Intent is determined by performing a contextual analysis. *See New Britain Real Estate & Title Co. v. Hartford Acceptance Corp.*, 153 A. 658, 659 (Conn. 1931) ("[T]he construction to

be accorded the instrument is dictated by the intent of the parties . . . in light of the circumstances under which it was executed.") (internal citation omitted). For example, in *Engleman*, a policyholder was found to have substantially complied with her policy's requirements when she discussed changing her beneficiaries with her insurance agent and an attorney and wrote a letter to her insurance company looking to effectuate the change. *Engleman,* 240 Conn. at 290. Each of those facts was considered by the Connecticut Supreme Court in its conclusion that "it was [the insured's] intention to change the beneficiary, and that there was no evidence that she had ever abandoned that intention." *Id.*

When a policyholder abandons his or her intention to change the beneficiary, the substantial compliance doctrine no longer governs the analysis. *See Aetna Life Ins. Co. v. Hartford Nat. Bank & Trust Co.*, 146 Conn. 537, 542 (1959). In *Aetna*, the insured contacted the insurer and requested to change the beneficiary of her insurance policy "effective immediately" to the defendants. *Id.* at 540. The insurer responded by mailing the insured the forms necessary to effectuate the change. *Id.* After receiving the forms, the insured decided that she no longer wished to change the beneficiary and communicated as much to her insurance agent. *Id.* The insurance agent then returned the unsigned forms to the insurer's agent. *Id.* The Connecticut Supreme Court of Errors found that because the insured chose not to sign the form and therefore "had not done all that it was in her power to do to make the change effective," that the initial letter requesting the change of beneficiary could not be given effect. *Id.* at 543.

The situation here is analogous. Although Decedent may have initially intended to change the beneficiary of his life insurance policy, his subsequent actions indicate that he abandoned that intention and instead sought to preserve the original beneficiaries. *See Engleman*, 240 Conn. at 290; *Aetna*, 146 Conn. at 543. Jackson National's letter to Decedent clearly stated to him that his request for a change of beneficiary would not be given effect unless he provided the specified information. There is no dispute that Decedent actually

4

received the letter, and indeed, Ms. Pagan testified that Decedent received his mail through a slot in his door and that he "picked up all the mail every single day." There was no evidence that Decedent never received the letter stating that his requested change would not be given effect unless he took specific actions, and Decedent died a year later without having responded to the letter or taken any of the instructed actions. This is consistent with Natalie's testimony that Decedent instructed her that his life insurance policy was in her mother's and sister's names. Natalie's testimony was particularly credible since it was against her interest in that it implied that her sister Tara remained one of Decedent's intended beneficiaries, not her. The Court finds that the weight of the trial evidence shows that Decedent abandoned his intention to change the beneficiaries to Natalie and Ms. Pagan. Although Decedent may have once demonstrated changed intent, he did not do all that was in his power to make the change effective, and the Court concludes that Ms. Lozada and Tara Osorio are the proper beneficiaries of Decedent's life insurance policy to receive its proceeds.

### III.   Conclusion

Having concluded that Mayra Lozada has proven by a preponderance of the evidence that she and her daughter Tara Osorio are the proper beneficiaries of Adalberto Osorio's life insurance policy with Jackson National, judgment will be entered in favor of Mayra Lozada and Tara Osorio. The Clerk is directed to pay to them the interpleader funds deposited with the Clerk in accordance with the terms of the insurance policy.

The Clerk is requested to close this case.

                                    IT IS SO ORDERED.

                                    _____/s/_____
                                    Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 8th day of February 2021.